UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SWIFT FINANCIAL CORPORATION                                          PLAINTIFF
d/b/a SWIFT CAPITAL

v.                                              CIVIL ACTION NO. 3:15cv846-DPJ-FKB

BATH PLANET OF MISSISSIPPI, LLC, et al.                              DEFENDANTS

ORDER

This case is before the Court on motions to dismiss filed by Defendants Christina Kelty [11, 23] and KTM, Inc.; Kelty Plumbing, LLC; and Kelty Tile & Marble, LLC ("the Kelty Defendants") [21].  For the reasons that follow, Christina Kelty's first motion is denied as moot, her second motion is granted in part and denied in part, and the Kelty Defendants' motion is granted.

I.      Facts and Procedural History

This lawsuit arises out of a January 13, 2015 Future Receivables Sale Agreement ("the Agreement") between Plaintiff Swift Financial Corporation d/b/a Swift Capital ("Swift") and Defendant Bath Planet of Mississippi, LLC ("Bath Planet").  Am. Compl. [16] Ex. 1.  Under the Agreement, Swift purchased $64,450.00 of Bath Planet's future receivables for a one-time payment to Bath Planet of $50,000.00.  Bath Planet, in turn, was to make daily remittance payments to Swift of $537.08.  Mark Kelty, as President of Bath Planet, signed the Agreement both on behalf of Bath Planet and as Guarantor of Bath Planet's performance thereunder.

By mid-February 2015, Bath Planet began bouncing payments to Swift:  two in February and eight payments in March.  Bath Planet ultimately ceased making any payments to Swift after April 8, 2015.  According to Swift, as of July 29, 2015, Bath Planet owed it $60,339.88 under the Agreement.  Am. Compl. [16] Ex. 6.

On June 26, 2015, Mark Kelty filed a Voluntary Bankruptcy Petition under Chapter 7 in the United States Bankruptcy Court for the Southern District of Mississippi. Am. Compl. [16] Ex. 4. On November 3, 2015, Swift filed with the bankruptcy court a Complaint Objecting to the Discharge of a Certain Debt [21-10]. Thereafter, on November 20, 2015, Swift filed this lawsuit against Bath Planet; Christina Kelty, Mark Kelty's spouse; and the Kelty Defendants, three companies owned and operated by Mark Kelty's brother, John Kelty, and sister-in-law, Nikki Kelty.[1]

Through its Complaint, Swift asserts the following claims: breach of contract, bad-faith breach of contract, fraud, conversion, tortious interference with contract, and fraudulent transfer. Swift alleges that the Kelty Defendants are all alter egos of Bath Planet and may therefore be held liable for Bath Planet's misconduct. Similarly, Swift claims that Christina Kelty may be held liable for Bath Planet's misconduct under a corporate-veil-piercing theory; it also asserts several claims against Christina Kelty in her individual capacity. *See generally* Am. Compl. [16]. Christina Kelty and the Kelty Defendants filed the instant motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court has personal and subject-matter jurisdiction and is prepared to rule.[2]

---

[1] Although served with a summons and complaint in this matter on November 29, 2015, Bath Planet has neither answered nor otherwise entered an appearance. *See* Return of Service [4].

[2] Defendants' motions to dismiss also assert that the complaints were filed in bad faith and in violation of Federal Rule of Civil Procedure 11. *E.g.*, Defs.' Mot. [21] at 3–4. But "strict compliance with Rule 11 is mandatory." *In re Pratt*, 524 F.3d 380, 588 (5th Cir. 2008). And here, Defendants failed to separately move for sanctions or otherwise comply with Federal Rule of Civil Procedure 11(c)(2). The Court has not, therefore, considered these portions of Defendants' motions.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

"[W]hen considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are:  (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."  *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish*, 456 F. App'x 336, 340 (5th Cir. 2011).  In the present case, Swift has attached a wide variety of materials to the Amended Complaint including testimony taken from Mark Kelty.  As a result, the record before the Court is more expansive than with the typical Rule 12(b)(6) motion.

III.     Analysis

    A.     The Kelty Defendants' Motion [21]

Swift has not addressed Defendants' motion as it relates to breach of contract, bad faith, or conversion.  As to fraud, Swift at times offers vague arguments that the Kelty Defendants engaged in fraud along with Bath Planet, but Swift's Amended Complaint contains no allegations that the Kelty Defendants made any actionable misrepresentations.  Instead, Swift alleges that the Kelty Defendants "are the alter egos of Defendant Bath Planet."  Am. Compl. [16] ¶ 23; *see also id.* at ¶¶ 37–48.  This alter-ego argument—which Swift asserts as a separate "claim"—is the clear thrust of its briefing.  *See, e.g.*, Pl.'s Mem. [27] at 10 ("With respect to the KTM Defendants, this matter involves allegations of alter ego liability . . . .").

The parties dispute whether an alter-ego argument is a separate claim and whether it can be asserted against entities—like the Kelty Defendants—that are not LLC members of the alleged tortfeasor.  The Mississippi Supreme Court answered both questions in *EDW Investments, LLC v. Barnett*, holding that "'alter ego' is not a substantive claim but merely a procedural argument that, if successful, allows a plaintiff to pierce the corporate veil and recover from a corporation's shareholders.  Alter-ego liability can be extended *only* to a corporation's

shareholders . . . ." 149 So. 3d 489, 492 (Miss. 2014) (emphasis added); *see also Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d 32, 39 (Miss. Ct. App. 2012) (applying same veil-piercing rules to LLCs).

In *Barnett*, EDW Investments was a creditor to a defunct debtor, Techtronics, Inc. *Id.* at 491. EDW Investments filed suit, claiming that Techtronics fraudulently conveyed its assets to its owner's wife and three LLCs described as "shell entities." *Id.* But the Mississippi Supreme Court affirmed Rule 12(b)(6) dismissal of the alter-ego-based claims because EDW Investments failed to prove that the defendants were Techtronics's shareholders. *Id.* at 492–93. The same facts exist in this case. Swift cannot maintain alter-ego claims against the Kelty Defendants.

Swift's efforts to distinguish *Barnett* are not persuasive. First, even if the *Barnett* court read too much into *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044 (Miss. 1989) (establishing a three-prong veil-piercing test), that does not alter the ultimate holding. Second, Swift attempts to limit *Barnett* by observing that the claims against Techtronics were time-barred, leading the court to hold that EDW Investments "'simply [could not] pursue a judgment against these Defendants via an alter-ego theory.'" *See* Pl.'s Mem. [27] at 12–13 (quoting *Barnett*, 149 So. 3d at 492–93). But Swift ignores the sentence immediately before the quoted holding, where the Mississippi Supreme Court explained that dismissal was appropriate because it was "undisputed that none of the Defendants was a shareholder of Techtronics." *Id.* at 492–93. And that holding was consistent with *Restaurant of Hattiesburg*, where the Mississippi Court of Appeals concluded, "Thus, we hold to pierce the veil of an LLC the complaining party *must prove LLC membership as well as*" the three-prong *Gray* test. 84 So. 3d at 39 (emphasis added).

Finally, Swift's authority for its argument is not compelling. For the most part, the authority it cites either applies the law of other states or interprets Mississippi law before *Barnett* was decided. *See, e.g.*, *Jacobs v. Conseco, Inc.*, No. 2:09cv132-B-S, 2011 WL 902486, at *1 (N.D. Miss. Mar. 15, 2011) (pre-*Barnett* case addressing personal jurisdiction). The only case Swift offers that post-dates *Barnett* is *Powertrain, Inc. v. Ma*, 88 F. Supp. 3d 679 (N.D. Miss. 2015). As Swift observes, that case dealt with veil piercing between an individual and a company. Nevertheless, the court held, "Importantly, '[a]lter-ego liability can be extended only to a corporation's shareholders . . . .'" *Id.* at 695 (favorably quoting *Barnett*, 149 So. 3d at 492). *Powertrain* does not help Swift's cause.[3]

The Court is therefore left with the general rule that "[a]lter-ego liability can be extended *only* to a corporation's shareholders . . . ." *Barnett*, 149 So. 3d at 492 (emphasis added). Because the Kelty Defendants are not alleged to be shareholders or members of Bath Planet, the alter-ego theory does not apply to make them liable for Bath Planet's alleged wrongdoing. The Kelty Defendants' motion to dismiss is therefore granted.

B.     Christina Kelty's Motions [11, 23]

Swift asserts three claims against Christina Kelty individually: conversion, tortious interference with a contract, and fraudulent transfer. Additionally, Swift seeks to hold Christina Kelty liable for Bath Planet's alleged wrongdoing under a veil-piercing theory. Christina Kelty

---

[3]Though not clearly linked to its legal arguments, Swift does point out in its memorandum two averments from its Amended Complaint: (1) that Bath Planet was a subsidiary of the Kelty Defendants; and (2) that Bath Planet had been referred to as a division of Kelty Tile and Marble. But the former is a legal conclusion that must be disregarded under *Iqbal* and *Twombly*. As to the latter, Swift has alleged that Mark Kelty was Bath Planet's sole member. In any event, the factual averments fail to establish that the Kelty Defendants were LLC members under Mississippi Code sections 79-29-105 and 79-29-301.

filed two motions to dismiss these claims. The first [11] addressed the original Complaint and is denied as moot. As to the second [23], the Court will address the derivative-liability claims before addressing the claims asserted against Christina Kelty individually.

        1.        Piercing the Corporate Veil

Swift asserts that it "has alleged a valid, legal claim under the piercing the corporate veil doctrine against Defendant Christina Kelty stemming from her relationship as wife of the sole shareholder of Defendant Bath Planet . . . ." Pl.'s Resp. [28] at 7. In support of its position, Swift cites an Eleventh Circuit case applying Florida law, a Georgia Court of Appeals case applying Georgia law, and a 1951 Fifth Circuit case applying Mississippi law. *See id.* at 7–8 (citing *Molinos Valle Cibao v. Lama*, 633 F.3d 1330 (11th Cir. 2011); *Detrio v. Boylan*, 190 F.2d 40 (5th Cir. 1951); *Dews v. Ratterree*, 540 S.E.2d 250 (Ga. Ct. App. 2000)). The Court is not bound by the Eleventh Circuit or Georgia Court of Appeals cases.

The case applying Mississippi law—*Detrio*—did not involve piercing the corporate veil to impose liability on a corporate shareholder's spouse; instead, the case addressed whether a conveyance from a husband to his wife should be set aside as fraudulent. Affirming the district court's decision denying a motion to set aside the conveyance, the Fifth Circuit noted:

> Mississippi jurisprudence holds conveyances between husband and wife valid and invalid for the same reasons as between other persons, and the validity of such conveyances (though to be carefully scrutinized on account of the temptation to give an unfair advantage to the wife over other creditors), must be tested by the same principles as a conveyance by a debtor to a stranger, when brought into question as fraudulent against creditors.

*Detrio*, 190 F.2d at 42–43 (citation omitted).

In short, Swift has provided no authority to support its argument that Mississippi law would impose veil-piercing liability on a shareholder's spouse. Instead, the authority is to the

contrary.  *See Barnett*, 149 So. 3d at 492 (affirming dismissal of debtor's spouse who was not a shareholder); *Rest. of Hattiesburg, LLC*, 84 So. 3d at 39 ("We find the circuit court correctly cited *Gray* as the proper standard for what a plaintiff must show *in addition to LLC membership* to hold an LLC member liable for the LLC's debt.") (emphasis added).  Swift has not alleged that Christina Kelty was a member of Bath Planet.  As such, she cannot be held liable for its wrongdoing under a veil-piercing theory.  The motion to dismiss is granted as to the derivative claims.

        2.     Conversion

Swift alleges that Christina Kelty "wrongfully possessed and retained funds owed to Plaintiff Swift to Plaintiff Swift's exclusion," which "deprived Plaintiff Swift from payment of the Debt owed to it by Defendant Bath Planet," making Christina Kelty "liable to Plaintiff Swift for conversion."  Am. Compl. [16] ¶¶ 58–59.  The factual basis for the claim comes from Mark Kelty's testimony at his Bankruptcy Rule 2004 examination that between March and June 2015, a total of $24,400.00 was transferred from Christina Kelty's line of credit into Bath Planet's business account, with a total of $28,186.11 being transferred from the Bath Planet account back into Christina Kelty's credit-line account.  *Id.* ¶ 17(e) (citing M. Kelty Examination [16-3] at 70–74).  But Christina Kelty argues that Plaintiff's conversion claim is not cognizable under Mississippi law because "Mississippi law does not permit a claim of conversion of a debt."  Def.'s Mem. [24] at 11.

This argument flows from a broader point—conversion generally involves tangible personal property.  According to the Mississippi Supreme Court, "Conversion requires the intent to exercise dominion or control over *goods* inconsistent with the true owner's rights and is a

result of conduct intended to affect *property*." *Greenlee v. Mitchell*, 607 So. 2d 97, 111 (Miss. 1992) (emphasis added).  Significantly,

> [c]onversion lies only for personal property which is tangible. . . .  An action will not lie for the conversion of a mere debt or chose in action.  Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.

*Mossler Acceptance Co. v. Moore*, 218 Miss. 757, 765–66, 67 So. 2d 868, 871 (1953).

Swift would limit this holding to claims by creditors against debtors, noting that Christina Kelty is a non-debtor.  Pl.'s Mem. [28] at 9.  But the better read on *Mossler* is that creditors cannot sue debtors for conversion because debt is intangible.  Indeed the Fifth Circuit affirmed summary judgment of a conversion claim related to an intangible interest in *ABS Services, Inc. v. New York Marine & General Insurance Co.*, 524 F. App'x 946, 948 (5th Cir. 2013) (holding that "an unliquidated claim is not tangible personal property and therefore cannot be the subject of a claim for conversion under Mississippi law").

The present case does not involve Swift's tangible personal property, so the question is whether Swift's right to receivables under the Agreement is the type of property that can nevertheless support a conversion claim under Mississippi law.  Swift cites one Mississippi Supreme Court case recognizing conversion with respect to money.  In *LaBarre v. Gold*, Gold was entitled to a portion of the proceeds from the sale of real property.  520 So. 2d 1327 (Miss. 1987).  Despite knowing Gold's interest, upon receiving a check representing the proceeds, the defendants cashed the check and kept the money themselves, never remitting Gold's share.  The Mississippi Supreme Court affirmed the chancery court's finding that the defendants converted "the proceeds from the sale."  520 So. 2d at 1331.  Although *LaBarre* does not address the

distinction between tangible and intangible property, it nevertheless suggests that circumstances exist when possession of money can constitute conversion.

Those circumstances were examined in *Blades v. Countrywide Home Loans, Inc.*, where the defendant lender force-placed property insurance on what little remained of Blades's home after Hurricane Katrina.  No. 1:06cv1000-LG-JMR, 2007 WL 2746678, at *1 (S.D. Miss. Sept. 18, 2007).  The insurer did so with funds held in Blades's escrow account.  *Id*.  The district court first noted that "[t]he reported cases in Mississippi reflect the view that an action for conversion is available for wrongful interference with tangible items of personal property and those intangible rights that are customarily merged in, or identified with some document." *Id*. at *4 (quoting *DirecTV, Inc. v. Hubbard*, No. 2:03cv261-P-D, 2005 WL 1994489 at *4 (N.D. Miss. Aug. 17, 2005) (quoting 5 Jeffrey Jackson and Mary Miller, Mississippi Practice Series Encyclopedia of Mississippi Law § 41:88 (2001))).[4]  The *Blades* court then noted persuasive authority from other jurisdictions "distinguish[ing] between funds separated into an account for a specific purpose from those that are not designated or are intermingled with other funds."  *Id*. (collecting cases).  Adopting that approach, the court concluded that "[s]ince Blades has alleged that funds set aside in an account for a specific purpose were wrongfully taken by . . . the . . . defendants, she has set forth sufficient facts to state a claim of conversion that is plausible on its face."  *Id*.

Balancing all of this, the Court concludes that the debt to which Swift may be entitled is not personal property subject to conversion.  The Mississippi Supreme Court has never reversed

---

[4]*Blades* correctly cites its sources, but the undersigned found no Mississippi cases actually holding that conversion covers "intangible rights that are customarily merged in, or identified with some document."  *Id*.

*Mossler*. And unlike *LaBarre* and *Blades* (assuming Mississippi would follow the latter's approach), Swift has not alleged conversion of a particular, identifiable fund, or funds from a specific-purpose account. Instead, in its Amended Complaint, Swift contends that it was entitled to future receivables under the Agreement, Am. Compl. [16] ¶ 11, and that the Keltys "commingled funds between Defendant Bath Planet of Miss.'s BankPlus business bank account and Defendant Christina Kelty's credit line . . . ." *Id.* ¶ 17(e). Because Swift does not allege that Christina Kelty converted the sort of tangible personal property that can support a conversion claim, the motion to dismiss that claim is granted.

### 3. Fraudulent Transfer[5]

Swift alleges that Bath Planet made fraudulent transfers to Christina Kelty's line of credit; it asserts a resulting claim under Mississippi's Uniform Fraudulent Transfer Act. Miss. Code Ann. §§ 15-3-101, *et seq.* The act provides that "[a] transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor of the debtor." *Id.* § 15-3-107(1).

Based entirely on the above quoted passage, Christina Kelty asserts that the act does not permit Swift to pursue a fraudulent-transfer claim against her, because she was never Swift's debtor. But another portion of the act plainly permits a creditor to pursue a claim against the transferee of fraudulently transferred assets. *See id.* § 15-3-113(2) ("[T]o the extent a transfer is voidable in an action by a creditor under Section 15-3-111(1)(a), the creditor may recover judgment for the value of the asset transferred . . . against: [t]he first transferee of the asset or

---

[5]Swift generally alleges a fraud claim against each Defendant, but in its response, Swift limits its fraud claim against Christina Kelty to a statutory claim for fraudulent transfer. So to the extent another variety of fraud was pleaded, the claim was abandoned.

the person for whose benefit the transfer was made . . . ."); *see also Bally Gaming, Inc. v. Caldwell*, 12 F. Supp. 3d 907, 917 (S.D. Miss. 2014) ("Bally is asserting its own rights under Mississippi law to avoid any transfer made to defraud creditors. The remedy is against the property and the current party in possession." (citing Miss. Code Ann. §§ 15-3-107, 15-3-111)). Accordingly, Swift states a plausible claim against Christina Kelty under Mississippi's Uniform Fraudulent Transfer Act. The motion is therefore denied as to the fraudulent-transfer claim.

    4.    Tortious Interference with a Contract

Swift generally contends that funds Bath Planet should have paid Swift under the Agreement were "commingled" with Christina Kelty's line of credit, thereby interfering with Swift's contractual right to payment. Christina Kelty contends, however, that Swift has pleaded nothing but legal conclusions that are not given the presumption of truth. Def.'s Mem. [24] at 13–14.[6]

Kelty is, of course, correct that legal conclusions are not sufficient to avoid dismissal. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). But Swift has pleaded factual content. More specifically, Swift explains in its Amended Complaint how the funds were transferred between the two accounts. *See* Am. Compl. [16] ¶ 17(e). It further avers that "Christina Kelty's commingling of her funds with Defendant Bath Planet['s] funds . . . was intentional and willful, was calculated to cause damage to Plaintiff Swift . . . , was done for the

---

[6]In her reply, Christina Kelty makes the additional argument that "the plaintiff must prove that the contract would have been performed but for the alleged interference," and that Swift has made no such allegation, instead alleging "that Mark Kelty never had the financial capacity to complete the contract terms." Def.'s Reply [35] at 5–6. "It is well settled that a party may not raise an argument for the first time in a rebuttal." *Housdan v. JPMorgan Chase Bank, N.A.*, No. 3:13cv543-CWR-FKB, 2014 WL 4814760, at *8 (S.D. Miss. Sept. 24, 2014).

purpose of avoiding Bath Planet[']s] payment to Plaintiff Swift for the Debt, and actually caused damage and loss to Plaintiff Swift." *Id.* ¶ 60. Finally, Swift pleaded that "Christina Kelty wrongfully possessed and retained these funds, [and] exercised possession over these funds to the exclusion of Plaintiff Swift's right to payment of the Debt." *Id.* ¶ 17(f).

Swift has stated facts regarding the debt, the two accounts, the transfers, and the possession/retention of disputed funds. Other averments fall within the gray area between a legal conclusion and a factual assertion. For example, the term "commingling" might be a legal conclusion, but it is also factually descriptive, especially when considered in light of the other averments that must be viewed in a light most favorable to Swift. Finally, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," which Swift has done. Fed. R. Civ. P. 9(b).

Ultimately, the Court must conclude whether the claim is facially plausible based on reasonable inferences. *Iqbal*, 556 U.S. at 678. And "[t]his standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587. Swift has met that burden.[7]

---

[7] Two final points merit note. First, even if Swift fell short in its pleading, the case would still proceed against Christina Kelty on the fraudulent-transfer claim, and the Court would have given Swift an opportunity to seek leave to amend the tortious-interference claim. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Second, the parties dispute whether allowing funds to be placed in and remain with a party's account constitutes sufficient action to trigger liability for tortious interference. Neither party explored that legal argument, and should Defendant revisit this claim under Rule 56, the parties should offer legal authority for their positions.

13

IV.     Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the Kelty Defendants' Motion to Dismiss [21] is granted, Christina Kelty's first Motion to Dismiss [11] is denied as moot, and her second Motion to Dismiss [23] is denied as to the fraudulent-transfer and tortious-interference claims but otherwise granted.[8]

**SO ORDERED AND ADJUDGED** this the 6th day of June, 2016.

                                      s/ *Daniel P. Jordan III*
                                      UNITED STATES DISTRICT JUDGE

---

[8] As noted, Bath Planet filed no answer, and Swift has not moved for default. Swift is hereby given 14 days from the date of this order to obtain a clerk's entry of default or the claims against Bath Planet will be deemed abandoned.